## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ALLSTATE INDEMNITY COMPANY,** | ) | |
| | ) | |
| **Plaintiff/Counterclaim** | ) | |
| **Defendant,** | ) | |
| | ) | **Case No. 6:14-cv-03489-MDH** |
| vs. | ) | |
| | ) | |
| **JOSEPH DIXON and CASEY DIXON,** | ) | |
| | ) | |
| **Defendants/Counterclaim** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **LORETTA BAILEY AGENCY, INC. and** | ) | |
| **BETHANY FLENNIKEN,** | ) | |
| | ) | |
| **Counterclaim Defendants.** | ) | |

## ORDER

Before the Court are cross Motions for Summary Judgment (Doc. 135, 141). The Court has carefully considered the motions and their accompanying arguments, and hereby **DENIES** Defendants/Counterclaim Plaintiffs' Motion for Summary Judgment (Doc. 135) and **GRANTS IN PART AND DENIES IN PART** Plaintiff/Counterclaim Defendant's Motion for Summary Judgment as to Counts IV, V, and VI (Doc. 141).

## BACKGROUND

On February 14, 2014, Joseph Dixon and Casey Dixon purchased property at 791 State Hwy T, West Plains, Missouri, for $120,000. Around the end of February 2014, Mr. Dixon contacted Loretta Bailey Agency, Inc., which serves as an insurance agency for Allstate Indemnity Company, seeking an insurance policy covering the dwelling and all personal

property on the land. Bethany Flenniken, a licensed insurance agent and employee of Loretta Bailey Agency, Inc., provided insurance premium quotes for $116,411, $300,000 and $479,857. The quote for $479,857 was based on a computation of the actual cash value of the real property generated partially based on the square footage of the property, which was originally estimated as 4800 square feet.

On March 10, 2014, the parties entered into an insurance agreement providing dwelling coverage for $479,857 and personal property coverage for $60,000. The insurance policy was written and bound by Ms. Flenniken. On March 13, 2014, Allstate requested an inspection of the property. Following this inspection, Ms. Flenniken increased the square footage of the property in the policy to 7796 square feet. A new computation of the actual cash value of the real property returned a value of $732,855. During her deposition, Ms. Flenniken stated that she did not inform the Dixons of the new estimation of the property's actual cash value.

On the evening of April 12, 2014, a fire damaged the dwelling and personal property, and the Dixons later submitted a claim under the insurance policy seeking $532,857. Allstate Indemnity Company filed this action seeking declaratory judgment regarding its rights and obligations under the insurance policy. Allstate asserted that the policy did not provide coverage under the circumstances for either of two reasons: (1) Defendants concealed or misrepresented material facts when they told Allstate that neither they, nor anyone at their direction, intentionally started the fire; or (2) Defendants are barred from recovering under the policy because they, or someone at their direction, started the fire.

Joseph Dixon and Casey Dixon filed a counterclaim against Allstate for breach of contract and vexatious refusal to pay, the latter of which is governed by Mo. Rev. Stat. §§ 375.296 and 375.420. The Dixons also joined claims against third parties Loretta Bailey Agency,

Inc. and Bethany Flenniken as agents of Allstate for general negligence, negligent omission, and negligent representation. The Dixons alleged that Ms. Flenniken, as an employee of Loretta Bailey Agency, Inc., was negligent when she failed to inform the Dixons that the estimated actual cash value of the home had changed from $479,857 to $732,855. The Dixons also alleged that Ms. Flenniken negligently represented to them that personal property purchased for the purpose of using the dwelling as a bed and breakfast would be covered by the personal property policy. Allstate was joined as a defendant to these negligence claims based on agency theories of liability. The Court received a Notice of Settlement regarding the claims against Loretta Bailey Agency, Inc. and Bethany Flenniken. The Dixons continue to pursue all claims against Allstate, including the negligence claims.

The Dixons filed a Motion for Summary Judgment for all of their claims and Allstate's arson defense. Allstate filed a Motion for Summary Judgment regarding Counts IV, V, and VI of the Dixons' counterclaim. After full briefing on each of the issues, the matter is now ripe for review.

## STANDARD OF REVIEW

Summary judgment is proper if, viewing the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that

there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To do so, the moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

As to the Dixons' Motion for Summary Judgment, the Court finds there are genuine issues of material fact regarding Allstate's arson defense, Count I of the counterclaim alleging breach of contract, and Count II of the counterclaim alleging vexatious refusal to pay. Therefore, the court denies the Dixons' Motion for Summary Judgment as to those issues. As to Allstate's Motion for Summary Judgment, the Court finds no genuine issues of material fact and holds that Allstate is entitled to judgment as a matter of law regarding Counts IV and V of the counterclaim alleging general negligence and negligent omission. Therefore, the Court grants Allstate's Motion for Summary Judgment on those issues. However, as to Count VI of the counterclaim, alleging negligent misrepresentation, the Court concludes that no live controversy currently exists due to the legal positions taken by the parties, denies both parties' motions for summary judgment, and defers ruling on the issue of mootness until the issue can be taken up on a motion for directed verdict.

### A. Count I – Breach of Contract / Allstate's Arson Defense

Allstate's complaint seeking declaratory judgment and the Dixons' breach of contract counterclaim are two sides of the same coin. If summary judgment is improper as to Allstate's arson defense, it is also improper as to the Dixons' breach of contract claim. Thus, the Court will address them together.

The Dixons' argument for summary judgment rests upon the premise that Allstate, as a matter of law, cannot submit sufficient evidence such that a jury could find four "elements" of an insurer's arson defense.[1] However, Missouri courts have repudiated this analysis of arson defenses, stating, "Missouri law . . . is not so regimented." *Farm Bureau Town & Country Ins. Co. of Mo. v. Shipman*, 436 S.W.3d 683, 685 (Mo. Ct. App. 2014) (noting the analysis of arson defenses set out in *Fleming* and rejecting it). Instead, Missouri law requires only a single factual determination: Whether the insured intentionally caused or procured the fire. *Id.* Furthermore, the insurer is permitted to demonstrate arson through circumstantial evidence. *Id.*

The Court finds that genuine disputes of material fact exist regarding whether the Dixons intentionally caused or procured the fire. Viewing the record in the light most favorable to Allstate, the record shows that genuine issues of material fact exist such that a reasonable fact-finder could find in favor of Allstate. First, Mr. Dixon and Donald Hitch each confirmed there were no pre-existing issues within the property that might have served as a source of the fire. Furthermore, all appliances were turned off, no candles were burning, and the house was locked. The Dixons left the property between 8:00 p.m. and 8:30 p.m., and Mr. Dixon was the last person to leave the property. He was inside for roughly 5-8 minutes.

According to Terry Decker, one of the Allstate experts, the fire was discovered at 9:11 p.m. According to Robert Wysong, Allstate's second expert, the fire had fully engulfed the house by 9:22 p.m. Mr. Wysong concluded that the fire had either been burning for more than one hour prior to discovery, or the fire had multiple points of origin. Mr. Decker concluded that the fire was likely burning when the Dixons left the property, or shortly after they left. While none of the

---

[1] This element-based analysis was set out in *Nationwide Mut. Fire Ins. Co. v. Fleming*, 750 F. Supp. 996, 999 (E.D. Mo. 1990). In that case, the court stated that "[t]he elements are: (1) the incendiary nature of the fire; (2) motive on the part of the insured to set the fire; (3) opportunity for the insured, or someone acting on the insured's behalf, to set the fire; and (4) inculpating circumstances which are relatively strong." *Id.*

experts who investigated the fire could conclusively determine whether the fire was incendiary or accidental, this fact is not dispositive. A fact-finder will have the opportunity to hear the factual determinations and analyses of the various retained experts and reach their own conclusions regarding whether the fire was incendiary or accidental.

Second, three months prior to the fire, the Dixons entered into a contract to purchase the property for $120,000. On March 10, 2014, the Dixons acquired an insurance policy for $479,857 for the dwelling and for $60,000 for personal property. The fire damaged the property on April 12, 2014. By the time of the fire, the Dixons invested $13,400 into the property. As a result of the destruction of the property, Allstate became obligated to pay the remainder of the mortgage in the amount of $107,526.29. Prior to obtaining the insurance policy, Mr. Dixon made inquiries regarding cost replacement coverage.

Based on these facts, the Court holds that a genuine dispute of material fact exists because a reasonable fact-finder could find in favor of Allstate regarding the question of whether the Dixons intentionally caused or procured the fire. Therefore, summary judgment is denied as to Allstate's arson defense.

Furthermore, because a fact-finder could reasonably find in favor of Allstate based on its arson defense, the Court denies the Dixons' motion for summary judgment regarding its breach of contract claim.

### B. Counts II and III – Vexatious Refusal to Pay

The Dixons seek summary judgment on their claim that Allstate violated Mo. Rev. Stat. §§ 375.296 and 375.420, which provide for additional damages if an insurer refuses to pay a claim and that refusal was "vexatious and without reasonable cause." Missouri law requires the Dixons to prove three elements in order to prevail on a claim for vexatious refusal to pay: (1)

The Dixons must have had an insurance policy with Allstate; (2) Allstate refused to pay a claim on that policy; and (3) Allstate's refusal was without reasonable cause or excuse. *Hensley v. Shelter Mut. Ins. Co.*, 210 S.W.3d 455, 464 (Mo. Ct. App. 2007); Mo. Rev. Stat. § 375.420. The Eighth Circuit has noted that Sections 375.296 and 375.420 are penal in nature and that their purpose is to "deter the insurer from vexatiously refusing to pay 'after becoming aware that it has no meritorious defense' to the insured's claim." *State of Mo. ex rel. Pemiscot County, Mo. v. Western Sur. Co.*, 51 F.3d 170, 174 (8th Cir. 1995) (quoting *Morris v. J.C. Penney Life Ins. Co.*, 895 S.W.2d 73, 76 (Mo. Ct. App. 1995)). "The existence of a litigable issue, either factual or legal, does not preclude a vexatious penalty where there is evidence the insurer's attitude was vexatious and recalcitrant." *DeWitt v. Am. Family Mut. Ins. Co.*, 667 S.W.2d 700, 710 (Mo. banc 1984). However, the continued open question of whether Allstate has an arson defense to the Dixons' insurance claim necessarily precludes a finding by the Court, at the summary judgment stage, that Allstate acted without reasonable cause or excuse when it refused to pay the Dixons' claim. Such a question of reasonableness belongs in the hands of the fact-finder once it has determined whether the Dixons are entitled to recover under the insurance policy.

### C. Counts IV and V – Negligence and Negligent Omission

At the time the policy was bound, and prior to Allstate's inspection, the estimated square footage of the property was 4800 square feet, and the actual cash value of the dwelling was estimated at $479,857. Following the inspection, which revealed that the dwelling was 7798 square feet, the estimated actual cash value of the dwelling was $732,855. The Dixons claim that Allstate was negligent when its agents failed to inform the Dixons of the new estimated "actual cash value" of the property following the inspection.

"In any action for negligence, the plaintiff must establish that (1) the defendant had a duty to the plaintiff; (2) the defendant failed to perform that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injury." *Parr v. Breeden*, 489 S.W.3d 774, 778 (Mo. banc 2016) (quoting *Martin v. City of Washington*, 848 S.W.2d 487, 493 (Mo. banc 1993)). The key issue here is whether Allstate, through its agents, owed the Dixons a duty to inform them of the increased estimated value of the property. "The question of whether a legal duty exists is a question of law for the court to decide. Essential to the finding of a duty is 'the existence of a relationship between plaintiff and defendant that the law recognizes as the basis of a duty of care.'" *Manzella v. Gilbert-Magill Co.*, 965 S.W.2d 221, 225 (Mo. Ct. App. 1998) (quoting *Bunker v. Ass'n of Mo. Elec. Co-op.*, 839 S.W.2d 608, 611 (Mo. Ct. App. 1992)) (internal citations omitted).

"The scope of the agency of either an agent or a broker normally is limited to procuring the insurance requested by the insured." *Emerson Electric Co. v. Marsh & McLennan Cos.*, 362 S.W.3d 7, 13 (Mo. banc 2012). "[N]either agents nor brokers have a duty to advise the insured on its insurance needs or on the availability of particular coverage, unless the specifically agree to do so." *Id.* The Eighth Circuit, in analyzing Missouri law, has stated that "Missouri law does not require an insurance agent to appraise and evaluate its customers' business." *State Auto Prop. & Cas. Ins. Co. v. Boardwalk Apartments, L.C.*, 572 F.3d 511, 515 (8th Cir. 2009). However, the duty owed by an agent "may vary depending on the relationship of the parties and any agreements between them." *Emerson Electric*, 362 S.W.3d at 20. Thus, even if no general duty exists, the duty owed by an insurer may nonetheless expand based on the relationships or agreements between the parties. *Id.*

In *Manzella*, the insured claimed that the agents had "a duty to advise the [insured] of the *amount of insurance they required* to cover the anticipated losses for their deli business, and that [the agents] negligently breached that duty." 965 S.W.2d at 225 (emphasis added). The Missouri Court of Appeals rejected this assertion, stating that it was the insured's responsibility to "take care of [their] own financial needs and expectations" before entering the marketplace to procure insurance coverage. *Id.* at 226 (quoting *Farmers Ins. Co., Inc. v. McCarthy*, 871 S.W.2d 82, 85 (Mo. Ct. App. 1994)).

The Court holds that Allstate, through its agents, owed no general duty to inform the Dixons of the increased actual cash value of their property. Therefore, a duty to inform could exist only if some special relationship or extended agency agreement was formed. *Emerson Electric*, 362 S.W.3d at 13; *see also Manzella*, 965 S.W.2d at 227.

The Dixons argue that a provision in the contract binding the insurance policy created an expanded duty. The provision is as follows:

> **Important Notice**
> [Allstate] uses local agencies to assist customers with their insurance decision-making process by providing customers with information and high-quality service. These agencies provide numerous services to customers on the company's behalf. Agencies are paid a commission by the company for selling and servicing the company's insurance policies and may be eligible to receive additional compensation and rewards based on performance.[2]

Under Missouri law, insurance contracts are to be given their plain meaning. *Blevins v. State Farm Fire & Cas. Co.*, 961 S.W.2d 946, 949 (Mo. Ct. App. 1998). "The key to the interpretation of the contract is whether the contract language is ambiguous or unambiguous . . . . [A]mbiguity in language is found where that language could be reasonably construed in different ways." *Id.* (internal citations omitted). A court may not distort the language of an insurance contract to

---

[2] The Dixons rely only upon the first sentence: "[Allstate] uses local agencies to assist customers with their insurance decision-making process by providing customers with information and high-quality service." However, the Court cannot ignore the remainder of the "Important Notice."

create ambiguity where none exists. *Id.* "Where there is no ambiguity in the contract, it is our duty to enforce it as written." *Id.*

The Court holds that the "Important Notice" did not create an expanded duty. The Dixons argue that the notice constituted a promise by Allstate that its agents would provide information and advice regarding customers' insurance needs, and that this promise created an expanded duty to inform them of the new estimated actual cash value of the dwelling. However, this Notice is not a promise. It is a disclosure statement intended to inform customers that Allstate's insurance agents receive commissions from Allstate for selling insurance. The first sentence, upon which the Dixons rely, is solely intended to provide context to the disclosure. The Notice, when read as a whole, cannot reasonably be interpreted to place a duty upon Allstate to go beyond its general legal obligations.[3]

Therefore, neither Allstate nor its agents owed the Dixons a duty to inform them that the modification in square footage of the dwelling increased the estimated actual cash value of the property. Where there is no duty, there is no negligence. For these reasons, the Court grants Allstate's Motion for Summary Judgment as to Counts IV and V.

### D. Count VI – Negligent Representation

The Dixons have framed Count VI as being "merely anticipatory," in that they expect Allstate to assert that some of the personal property destroyed in the fire would not be covered by the personal property policy because the Dixons intended to use it for business purposes (Doc. 162, pg. 37). If Allstate makes such an argument, Count VI is intended to serve as a countermeasure: The Dixons will argue that Ms. Flenniken negligently misinformed them

---

[3] The Dixons point out that Loretta Bailey and Bethany Flenniken stated, in their depositions, that they consider it important to inform customers of information like an increase in the actual cash value of property. Providing this information may constitute a good business practice, but good business practices do not necessarily give rise to legal obligations.

when she stated the property would be covered under the personal property policy, and they

relied on those statements to their detriment. Allstate, in its Reply Suggestions, responded by

stating in no uncertain terms that it will not proceed in such a manner:

> Let Allstate be clear, it will not take a position at trial that [the Dixons'] personal property is not covered because it was being used for a business or a commercial purpose. Allstate's position . . . will be that [the Dixons'] personal property is not covered because [they] concealed and/or misrepresented material facts regarding the nature and extent of [the Dixons'] personal property claim, and that neither they, nor anyone at their direction, started the fire.

(Doc. 179, pg. 48).

Additionally, the Court understands that the parties intend to stipulate that Allstate will

not make this argument. In light of this acknowledgement by Allstate and the intent of the parties

to stipulate, the Court questions whether a live controversy remains as to Count VI. The parties

agree that the property in question cannot be denied coverage on the basis that the Dixons used it

for business purposes. There can be no tort if the denial of coverage is unrelated to Ms.

Flenniken's allegedly inaccurate statements. Count VI was asserted based solely on the

possibility Allstate might make an argument that it now states it will not make.

Federal courts are limited to deciding "Cases" and "Controversies." U.S. Const. Art. III;

*Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013). A litigant may invoke the jurisdiction of a

federal court only if they have "suffered, or [are] threatened with, an actual injury traceable to

the defendant and likely to be redressed by a favorable judicial decision." *Chafin*, 133 S. Ct. at

1023. "Federal courts may not 'decide questions that cannot affect the rights of litigants in the

case before them . . . ." *Id.* (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). The

requirement that federal courts limit themselves to deciding cases or controversies subsists

throughout the proceedings. *Id.* A case is moot "when it is impossible for a court to grant any

effectual relief whatever to the prevailing party." *Id.* (quoting *Knox v. Service Employees*, 132 S.

Ct. 2277, 2287 (2012). "A case is not moot so long as the parties retain any 'concrete interest, however small, in the outcome of the litigation." *In re Steward*, ___ F.3d ___, No. 15-1988, 2016 WL 3629028, at *6 (8th Cir. July 7, 2016) (quoting *Chafin*, 133 S. Ct. at 1023). Where the court is being asked to address "a hypothetical state of facts," Article III denies the court the power to decide the question. *Lewis*, 494 U.S. at 477 (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1976)).

Given the parties' current positions, the Court concludes that it no longer has the power to decide Count VI. However, the parties' legal positions may change and the controversy may come back to life. The Court will address this issue as part of a motion for directed verdict, when the evidence and arguments submitted to the fact-finder will be clear, and the status of the controversy can be conclusively determined.

Therefore, the Court denies both parties' Motions for Summary Judgment regarding Count VI. Furthermore, the Court defers ruling on the issue of mootness until the appropriate time at trial, when the issue may be taken up as part of a motion for directed verdict.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants/Counterclaim Plaintiffs' Motion for Summary Judgment on all counts. The Court **GRANTS** Plaintiff/Counterclaim Defendant's Motion for Summary Judgment as to Counts IV and V and **DENIES** Plaintiff/Counterclaim Defendant's Motion for Summary Judgment as to Count VI.

IT IS SO ORDERED:
**Date: August 18, 2016**

    */s/ Douglas Harpool*_____
    **DOUGLAS HARPOOL**
    **UNITED STATES DISTRICT JUDGE**